GRACE S. CLOSE *vs.* JOSEPH B. MARTIN.

Suffolk.   November 20, 1910. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, Specific performance.   *Contract*, Construction.   *Bond*, Construction, To convey land.   *Deed*, Acknowledgment, Recording.   *Agency*.   *Waiver*. *Tender*.

If one has agreed in writing to purchase certain land and to receive a quitclaim deed thereof, "conveying a good and clear title to the same free from all incumbrances, excepting restrictions of record, if any now in force and applicable, and taxes " for the current year, it is no defense to a suit in equity against him for specific performance of the agreement that he insisted upon a title which the owner's attorney would absolutely guarantee never would cause him trouble and that such guaranty was refused, since equity requires him to accept a title which is good only beyond a reasonable doubt.

In a suit in equity to enforce specific performance of an agreement in writing whereby the defendant agreed to purchase certain land from the plaintiff, the

following facts appeared: On an April 7 the owner of two parcels of land, one of which was the land in question, gave a bond conditioned upon the conveyance of the two parcels for $7,000, of which $2,000 was to be paid on the execution of the bond and $5,000 was to be paid by the obligee's assuming an outstanding mortgage on the land, "the deed to be delivered within sixty days" from the date of the bond. It also was provided in the bond that the obligor reserved the right " to convey the premises to any person other than the obligee upon payment to him of the said sum of $2,000 with interest . . . at any time within sixty days from the date of the bond." The parcel not in question was conveyed to the obligee by a deed dated the twenty-seventh of the same month, which was not recorded until the following August 9. On August 6 of the same year, by a deed recorded on the twentieth of that month, the parcel in question was conveyed to a predecessor in title of the plaintiff. The defendant contended that a defect in the title appeared in that the record did not show that the condition of the bond had been performed and that therefore he was warranted in refusing to perform his agreement. *Held*, that there was no defect, since the bond did not affect the obligor's right to convey the land away, but was merely an agreement to pay back the $2,000, which had been paid on the execution of the bond, in case the obligor conveyed both parcels of land under the right reserved to him in the deed.

By the provisions of St. 1895, c. 460, nothing contained in St. 1894, c. 253, with regard to the recognition of the validity of the proof or acknowledgment of deeds and instruments in other States before any officer thereof authorized to take such acknowledgment, provided the authority of such officer is authenticated in a certain manner therein specified, should prevent the acknowledgment of such deeds or instruments in the form and manner lawfully used before the passage of that act or the recording of instruments so acknowledged, and therefore deeds regarding land in the Commonwealth, acknowledged in 1894 and 1898 before a justice of the peace in Maine in accordance with the requirements of Pub. Sts. c. 120, § 6, were entitled to be recorded and recognized here without having appended to them the authentication of the title of the acknowledging officer to his office which St. 1894, c. 253, required.

The owner of certain land agreed in writing to sell and convey it at noon on a certain day and at a certain place, free from all incumbrances, to one, who with the owner's assent employed to examine the title for him the attorney at law who he knew was acting for the owner in the transaction. The agreement also provided that the time and place for passing papers should not be changed "unless the parties hereto agree in writing to some other time and place." On the afternoon of the day before that appointed, the attorney found that he needed to examine a certain bond before coming to a conclusion as to the title, and he thereupon notified the owner that he need not attend at the time and place appointed. On the morning of the day appointed the attorney told the purchaser that he needed to see the bond. The attorney procured a copy of the bond in the afternoon of that day and tried in vain to reach the purchaser. The next morning he reported the title clear to the purchaser, who refused to accept a deed unless he could be " absolutely guaranteed" that there would be no trouble to him later because of the existence of the bond. *Held*, that the fact, that the attorney who was examining the title for the purchaser notified the owner, for whom he was acting in other matters regarding the transaction, that he had not finished his examination of the title and would not be ready to report upon it by the time set in the agreement, constituted a waiver by the purchaser of the requirement of a conveyance at that time, notwithstanding the

provisions of the contract requiring an agreement in writing for a change in such time.

Where by a contract in writing one agrees to accept a conveyance of certain land "free from all incumbrances," and thereafter refuses to accept such conveyance unless he is "absolutely guaranteed" that there would be no trouble to him later because of the existence of a certain bond, the requirement of a formal tender of a deed by the owner before the bringing of a suit in equity for specific performance of the contract is dispensed with.

BILL IN EQUITY, filed in the Superior Court on October 4, 1909, seeking the specific performance of an agreement in writing by the defendant to purchase land from the plaintiff, the agreement stating that conveyance was to be made "on or before September 30, 1909, by a good and sufficient quitclaim deed of . . . [the plaintiff,] . . . conveying a good and clear title to the same free from all incumbrances, except restrictions of record, if any now in force and applicable, and taxes assessed as of May 1, 1909."

In the Superior Court the case was heard by *Fessenden*, J. A commissioner was appointed under Equity Rule 35 to take the evidence. The facts are stated in the opinion. A final decree was entered, granting the relief sought by the plaintiff; and the defendant appealed.

The case was submitted on briefs.

*J. P. Prince*, for the defendant.

*C. F. Choate, Jr., & F. H. Nash*, for the plaintiff.

LORING, J. There is nothing in this appeal beyond the application of well settled principles of law to the particular facts of this case.

The plaintiff and defendant entered into a written contract by which the plaintiff agreed to sell and the defendant to buy a parcel of land therein described. The papers were to be passed in the registry of deeds at noon on September 30, 1909, " unless the parties hereto agree in writing to some other time and place." The plaintiff's attorney with the knowledge and consent of the plaintiff was employed by the defendant to examine the title, and the defendant knew that except for the examination of the title the attorney was to represent the plaintiff. The attorney found on the afternoon of September 29 that he wanted to see the terms of a bond for a deed, given in 1869, before coming to a conclusion as to the title. Thereupon he telephoned to the

plaintiff that she need not attend the next day unless she heard from him. On the morning of the next day (the day on which the papers were to be passed) he told the defendant that he wanted to see the terms of this bond before reporting on the title. The attorney got the copy of the bond in the afternoon of that day (September 30), and tried unsuccessfully to get the defendant on the telephone that afternoon. On the morning of the next day (October 1), he reported to the defendant that he " stood ready to pass the title." To this the defendant replied that unless he could be absolutely guaranteed that there would be no trouble to him later because of the existence of the bond he would not take the title.

When the defendant insisted upon a title which the attorney could absolutely guarantee never would cause him trouble, he asked for a better title than equity requires a purchaser to accept. A title which is good beyond a reasonable doubt is a title which equity requires a purchaser to take. *First African Methodist Episcopal Society* v. *Brown,* 147 Mass. 296. *Martin* v. *Hamlin,* 176 Mass. 180, 181.

The defendant now contends that the title is not good beyond a reasonable doubt because of the bond and because certificates are not appended to the acknowledgments of the two assignments made in Maine of the same mortgage.

The bond was a bond in the penal sum of $2,000, and was dated April 7, 1869. It was conditioned upon the conveyance of two parcels of land, one of which was conveyed to the obligee by deed dated April 27, 1869, and recorded August 9, 1869, and the other (the land in question in the case at bar) was conveyed to a third person, a predecessor in title of the plaintiff, by a full warranty deed dated August 6, 1869, and recorded on August 20, 1869. It is recited in the bond that the obligor had sold the two parcels to the obligee for $7,000 of which $2,000 was to be paid down on the execution of the bond and the re-. maining $5,000 was to be paid by the obligee's assuming an outstanding mortgage on the two parcels in the sum of $5,000, "the deed to be delivered within sixty days herefrom." The condition also contained a reservation on the part of the obligor by which he was to have the right "to convey the premises to any person other than the said obligees upon payment to them

of the said sum of two thousand dollars with interest at the rate of      per cent per annum at any time within 60 days herefrom."

Having in mind the fact that the agreement recited in the bond is one sale of both parcels for one price, and the further fact that the deed dated April 27 was not recorded until after the date of the second deed, it is fairly plain that what took place was this: The obligee was not in a condition to carry through his trade with the obligor for the purchase in question of the two parcels until he got some one to take the parcel which was not conveyed to him, and that he did not succeed in getting such a person until August 6, the date of the deed of the second parcel to the other person, and that said deed was made to the other person as the obligee's nominee and not under the right reserved to the obligor to convey to a third person. But however that may be, we are of opinion that by the true construction of it the bond was nothing more than an agreement to pay back the $2,000 paid down on execution of the bond in case the obligor conveyed both parcels of land under the right reserved to him so to do in the deed, and that it did not affect the obligor's right to convey it away.

The other matter relied upon by the defendant as a defect is that in two instances assignments of the same mortgage (which mortgage was discharged by coming into the ownership of the owner of the equity of redemption) were acknowledged before justices of the peace in Maine, and no certificates were recorded in the registry of deeds showing that these men held that office. These assignments were made in 1894 and 1898. It was provided by St. 1895, c. 460, that nothing contained in St. 1894, c. 253, should prevent the acknowledgment of conveyances in the form and manner lawfully used before the passage of that act. Before the passage of that act it was enough that the deed, if acknowledged in another State, was acknowledged before a justice of the peace. Pub. Sts. c. 120, § 6. It was not necessary to append to the acknowledgment a certificate that the person taking it was a justice of the peace. It was proved at the trial that the persons in question were justices of the peace.

There is nothing in the other contentions of the defendant. The plaintiff's failure to attend at the registry of deeds on September 30 is not fatal to her case. The defendant's attorney

had not finished his examination of the title in time to report upon it at that time, and he notified the plaintiff on the day before that he would not be ready to report upon it at the time appointed and that she need not attend.   That was a waiver. The fact that it was provided in the contract that the time for passing the papers should not be changed "unless the parties hereto agree in writing to some other time and place" did not prevent that.   *Bartlett* v. *Stanchfield*, 148 Mass. 394.   *Goodhue* v. *Hartford Fire Ins. Co.* 175 Mass. 187.   The defendant's refusal to accept a good title dispensed with a formal tender.

*Decree affirmed.*